WOODSTOCK HUNT CLUB *et al.*, Plaintiffs-Appellees, v. STEVEN HINDI *et al.*, Defendants-Appellants (Chicago Animal Rights Coalition *et al.*, Defendants).

Second District   Nos. 2—96—1288, 2—96—1342, 2—96—1343 cons.

Opinion filed September 11, 1997.—Rehearing denied October 9, 1997.

1052

Louis M. Bruno, of O'Keefe, Lewis & Bruno, P.C., of Skokie, and Richard D. Grossman, of Chicago, for appellants.

Matthew M. Litvak, of Chicago, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

In this consolidated case, defendants Steven and Carol Gross appeal the trial court's grant of a permanent injunction enjoining them from violating the Hunter Interference Prohibition Act (Act) (720 ILCS 125/0.01 *et seq.* (West 1996)). Defendant Steven Hindi appeals his conviction of indirect criminal contempt of court and his sentence of 180 days in jail. We affirm.

On October 11, 1996, plaintiffs filed a petition for injunctive relief and a complaint for damages, alleging that defendants had violated the Act by, among other things, using sirens, bullhorns, and an engine-powered glider to scare geese away from the Woodstock Hunt Club, a club in which members pay an annual membership fee and daily hunting fees to hunt on club property. Plaintiffs also filed an emergency motion for a temporary restraining order (TRO), seeking to restrain and enjoin defendants from violating the Act. A hearing was held on this motion on October 11, 1996, and the court issued a temporary restraining order and a preliminary injunction against the defendants. Defendant Hindi was not present at the hearing, and

he subsequently moved to dissolve the temporary restraining order against him on October 15, 1996. That motion was denied.

On October 25, 1996, plaintiffs filed a verified petition for a rule to show cause against Hindi. Plaintiffs alleged that on October 12 and 13, 1996, Hindi and other persons used megaphones and other devices to disturb wild animals and hunters on the property of the club. Hindi was arrested and criminally charged with violating the Act on October 12, 1996.

Following a hearing on November 7, 1996, the court issued a permanent injunction against Steve and Carol Gross, enjoining any conduct violative of the Act. The court also found Hindi in indirect criminal contempt of court for having violated the October 11 temporary restraining order and sentenced him to 180 days in the McHenry County jail. Hindi's motion to modify sentence was denied. These appeals followed.

The Act provides:

"§ 2. Any person who performs any of the following is guilty of a Class B misdemeanor:

(a) Interferes with the lawful taking of a wild animal by another with intent to prevent the taking.

(b) Disturbs or engages in an activity that will tend to disturb wild animals, with intent to prevent their lawful taking.

(c) [D]isturbs another person who is engaged in the lawful taking of a wild animal or who is engaged in the process of taking, with intent to dissuade or otherwise prevent the taking.

(d) [E]nters or remains upon public lands, or upon private lands without permission of the owner or his agent or a lessee, with intent to violate this Section." 720 ILCS 125/2 (West 1996).

"§ 4. (a) Any court may enjoin conduct which would be in violation of Section 2 of this Act upon petition by a person affected or who reasonably may be affected by such conduct, upon a showing that such conduct is threatened or that it has occurred on a particular premises in the past and that it is not unreasonable to expect that under similar circumstances it will be repeated." 720 ILCS 125/4(a) (West 1996).

Defendants argue that the Act is vague and overly broad and, therefore, unconstitutional. We disagree.

Statutes are presumed to be constitutional, and all reasonable doubts are to be resolved in favor of upholding legislation. *Herbes v. Graham*, 180 Ill. App. 3d 692, 703 (1989). The burden of demonstrating the invalidity of a statute falls on the party challenging the constitutionality of the legislation. *Rackow v. Human Rights Comm'n*, 152 Ill. App. 3d 1046, 1057 (1987). The mere possibility that some

future situation could arise that would raise serious constitutional questions is not sufficient to invalidate a statute. *Rackow*, 152 Ill. App. 3d at 1057.

■ Defendants contend that the Act is overly broad and vague in that it prohibits expression that is protected under the first amendment to the United States Constitution. The overbreadth doctrine is designed to protect first amendment freedom of expression from laws written so broadly that the fear of punishment may dissuade people from taking advantage of that freedom. *People v. Anderson*, 148 Ill. 2d 15, 26 (1992). A statute that regulates conduct is facially overly broad if it (1) criminalizes a substantial amount of protected behavior when judged in relation to the law's plainly legitimate sweep and (2) is not susceptible to a limiting construction that avoids constitutional problems. *City of Harvard v. Gaut*, 277 Ill. App. 3d 1, 6 (1996). For a statute to be invalidated for overbreadth, its overbreadth must not only be real, but also substantial. *Anderson*, 148 Ill. 2d at 26. This doctrine is only to be used sparingly. *Anderson*, 148 Ill. 2d at 26.

■ We must first determine whether the statute affects both communicative as well as noncommunicative conduct. For first amendment purposes, facial constitutional scrutiny of criminal statutes is warranted if the statute criminalizes a substantial amount of constitutionally protected conduct even if other parts may have legitimate application. See *City of Houston v. Hill*, 482 U.S. 451, 458-59, 96 L. Ed. 2d 398, 410, 107 S. Ct. 2502, 2508 (1987). We determine that this threshold is crossed by subsections (a), (b), and (c) of section 2 of the Act, because the interference or disturbances prohibited in those subsections may be verbal as well as physical. See *State v. Ball*, 226 Conn. 265, 272, 627 A.2d 892, 897 (1993).

We must next determine whether the proscriptions of the statute are content based or content neutral. Content-based statutes are presumptively invalid. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 120 L. Ed. 2d 305, 317, 112 S. Ct. 2538, 2542 (1992). However, we conclude that the Act is content neutral. The Act prohibits interfering with or disturbing hunters or wild animals without regard to any content that the conduct constituting the interference or disturbance may have. A person may violate the Act by shouting "Fire!", by waving a placard proclaiming "Hunting is good!" in front of a hunter, or by playing the 1812 Overture on a stereo system, if any of these actions is done with the intent to dissuade or prevent the taking of a wild animal and disturbs either a hunter or his intended quarry. The Act does not single out any particular thought or opinion for prohibition. It does not prohibit conduct of any particular content. It merely prohibits intentional interference with the lawful taking of wild animals. Therefore, we conclude the Act is content neutral.

We next must determine if the Act is overly broad in that it has the potential effect of chilling or inhibiting speech protected by the first amendment. We conclude that it does not. The conduct that is prohibited by the Act is the disturbance of a hunter engaged in a lawful activity, when it is done with the intent to dissuade the hunter or prevent the taking of a wild animal. While the disturbance may be physical or verbal, it is not dependent on the content of what is expressed or whether antihunting sentiment is what prompted the disturbance. See *State v. Lilburn*, 265 Mont. 258, 268, 875 P.2d 1036, 1042 (1994). Defendants argue that the Act is directed at the communicative nature of conduct because it forbids attempts to change the mind of a hunter or dissuade him. Defendants read the Act too broadly. The Act does not prevent antihunting advocates from trying to dissuade hunters from hunting. It prohibits disturbing a hunter *engaged in the process of taking a wild animal* if the intent of the disturber is to dissuade the hunter or prevent the taking of the animal. Any expression suppressed by the Act is out of concern for its intentionally disruptive nature, not for its likely communicative impact. Antihunting advocates may still attempt to convince hunters to stop hunting. However, they may not improperly interfere with hunters during the hunt.

The Act's legitimate sweep is clear: to prevent intentional disturbances during the hunt, a dangerous time when loaded weapons are legally carried. This inclusion of criminal intent is necessary to exclude those who may disturb a hunter with no intent of harassing the hunter or preventing the taking, *i.e.*, commercial aircraft, cars with loud mufflers, or people on jet skis. The conduct criminalized by the Act is reasonably drawn and is not protected by the constitution. Defendants have failed to sustain their burden of demonstrating a real *and* substantial overbreadth. Resolving any doubts in favor of constitutionality, we conclude that the Act is not facially overly broad and is constitutional.

Defendants also contend that the Act is unconstitutional as applied. We disagree. All three defendants had been seen in a group of protestors using a megaphone and sirens to make loud noises to disturb hunters on adjoining private property. Steven Hindi had flown an ultralight airplane over private property, at flocks of geese and near hunters. Defendants argue that these actions were the "peaceful expression of unpopular views," in the case of megaphones and sirens, and "an act of protest no less than that of *** flag-burners" in the case of the ultralight airplane. These actions were neither. These were obvious attempts to disturb hunters and wild animals in an effort to stop hunting from occurring on private prop-

erty. Loud noises and aerial acrobatics are not protected forms of speech. The defendants could not yell into megaphones, blast sirens, and buzz their neighbor's yard because they did not want him to engage in some other legal activity, such as smoking or hanging out laundry. Neither can they do those things to prevent hunting. Defendants have many avenues to legitimate protest available to them. However, their actions here are not protected, and the Act is constitutional as applied to these defendants.

We conclude that the Hunter Interference Prohibition Act is constitutional, both facially and as applied. Therefore, we affirm the issuance of the injunctions entered against the defendants.

Defendant Hindi also appeals from his conviction of and jail sentence for contempt of court. Following a hearing, the court found Hindi in indirect criminal contempt of court for violating the TRO entered on October 11, 1996, and sentenced Hindi to 180 days in jail. We affirm.

■ Hindi first contends that the finding of guilt was not supported by evidence beyond a reasonable doubt. He argues that he could not have willfully violated the TRO because he did not know the contents of the TRO, as he was not present for the hearing at which the TRO was granted and did not receive actual service of the TRO until after he was accused of violating it. However, Hindi never raised this argument before the trial court in his motion to dissolve the TRO, in his argument at the end of the hearing, or in his motion to modify sentence. As a matter of fact, Hindi's counsel at argument stated, "And so Mr. Hindi was out there exercising what he believed was clearly within the Court's order on that date." Clearly, he was not relying on "lack of knowledge" as a defense at the hearing. A party is not entitled to the reversal of a judgment upon grounds not submitted to the trial court and upon which the court did not and was not asked to decide. *People v. Adam*, 15 Ill. App. 3d 669, 670 (1973). As Hindi did not argue this issue below, we will not consider it here.

■ Hindi also argues that his conviction must be reversed because the trial court failed to recite, either at the contempt hearing or upon sentencing, that Hindi was found guilty beyond a reasonable doubt. When a contemnor is found guilty of indirect criminal contempt, the court must recite that the contemnor has been found guilty beyond a reasonable doubt. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 61 (1990). However, this requirement is not necessary in all cases. See *People v. Ramsell*, 266 Ill. App. 3d 297, 301 (1994); *In re Marriage of Cummings*, 222 Ill. App. 3d 943, 949 (1991). In *Cummings*, the court determined that the recitation was necessary because of confusion regarding the nature of the contempt and

because the record did not clearly show that the petitioner was found guilty beyond a reasonable doubt. *Cummings*, 222 Ill. App. 3d at 949. In *Ramsell*, the court also determined that, since the record was not clear that defendant was found guilty beyond a reasonable doubt, the court's failure to recite the language required reversal. *Ramsell*, 266 Ill. App. 3d at 301. Here, however, there is no confusion regarding the nature of the contempt nor any question regarding guilt beyond a reasonable doubt in the record. The testimony was uncontroverted that Hindi flew the ultralight aircraft and was in the group that used the megaphone and sirens. Hindi argued that he *thought* he could do these things without violating the TRO. He *thought* wrong.

The court stated:

> "As far as Mr. Hindi goes, you could have hurt somebody out there too with that goofy little plane you had when you come within ten feet of the hunters or they could have hurt you. I don't understand that—why you would take a chance on hurting somebody or them hurting you.
>
> I saw and heard the Defendant with the megaphone or whatever you want to call it. And I think he's—The Defendant has snubbed his nose at this Court, at the laws of the State of Illinois, and that he's guilty of willful and indirect criminal contempt of court."

We conclude that the court's statement that Hindi is "guilty of willful and indirect criminal contempt of court" is sufficient in considering this uncontroverted evidence in this record. The failure to recite the words "beyond a reasonable doubt" does not require reversal of Hindi's conviction.

■ We similarly find no error in the sentence imposed upon Hindi. The trial court is in the best position to determine a suitable sentence for a person found guilty of indirect criminal contempt, and a reviewing court will not disturb that determination absent an abuse of discretion. *In re B.J.*, 268 Ill. App. 3d 449, 452 (1994). Here, the trial court heard evidence regarding Hindi's violation of the TRO and had the opportunity to view Hindi as he testified. Certainly, the trial court was in a better position to determine a sentence than is this court, which only has the opportunity to review the sterile transcripts of the hearing. We cannot rule that a sentence is excessive, as Hindi argues, simply because it is the maximum allowable sentence.

We further disagree with Hindi's argument that the sentence should be reversed because the court imposed the sentence without allowing Hindi to present evidence in mitigation. First, Hindi did not request an opportunity to present such evidence. He only asked for a stay on the sentence, which was denied. Having failed to request a

mitigation hearing, Hindi is considered to have waived the right to that hearing. See *Sunset Travel, Inc. v. Lovecchio*, 113 Ill. App. 3d 669, 679 (1983). In addition, Hindi presented arguments in mitigation in his motion to modify sentence, which was denied. This motion, while presenting evidence in mitigation, never argued that Hindi was denied the right to present such evidence prior to sentencing. We, therefore, conclude that the sentence imposed on Hindi is proper and will not be reversed.

For these reasons, the judgments of the circuit court of McHenry County are affirmed.

Affirmed.

GEIGER, P.J., and INGLIS, J., concur.