No. 3--00--0684

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

BRENT LANGMAN and )  Appeal from the Circuit Court

RITA LANGMAN )  of the 21st Judicial Circuit

)  Kankakee County, Illinois,

Petitioners-Appellees, )

) 

v. )  No. 99--F--67

) 

AMY LANGMAN, )  Honorable 

)  Susan Sumner Tungate

Respondent-Appellant.
 )  Judge Presiding

_________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

The respondent, Amy Langman, appeals from the judgment of the circuit court of Kankakee County granting the petitioners, Brent and Rita Langman, visitation rights to their grandchildren. On appeal, Rita argues: (1) section 607(b)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act) is unconstitutional as applied in this case (750 ILCS 5/607(b)(1) (West 1998)); (2) section 607(b)(1) of the Act is unconstitutional on its face (750 ILCS 5/607(b)(1) (West 1998))
; and (3) the trial court's visitation schedule was against the manifest weight of the evidence.  We hold that section 607(b)(1) of the Act is unconstitutional as applied in this case and reverse the trial court's judgment.
 

The record reflects that Amy and Rhett Langman were married and had two children, T.L., born September 3, 1995, and P.L., born June 25, 1998.  Rhett died in an accident on September 20, 1998.  After Rhett's death, Amy had disagreements with Rita and Brent, Rhett's parents, regarding the amount of time they would be allowed to spend with her children.  Amy wanted only supervised visitation.  Rita and Brent wanted unsupervised visitation.

On May 21, 1999, Rita and Brent filed a petition to set grandparent visitation.  At the hearing on the petition, Elizabeth Langman testified that she was the children's great-grandmother and had resided with Brent and Rita for the last two years.  According to Elizabeth, before Rhett's death, he would bring T.L. over to the house once a week for visits.  She said that Rita and Brent had a loving relationship with T.L.  She had observed T.L. shower with his grandfather on more than one occasion, but she did not find that to be improper.

Amy testified as an adverse witness.  She said that she and the children had moved six hours away from Rita and Brent to Columbia, Missouri, for a fresh start.  She said that when Rhett was alive, he used to take T.L. over to Rita and Brent's once a week.  T.L. used to spend 10 hours a week at Rita and Brent's home until Amy learned that Brent was showering naked with T.L.   Brent testified that before Rhett died, he would see his grandchildren about every two weeks.  He had a good relationship with Rhett and they were in business together.  He and Rita would vacation with Rhett, Amy, and the children at least once a year.  After Rhett died, they would see the children on Tuesday nights while Amy bowled.  He had not heard from the children or seen them since the previous Halloween.  Brent said that he and Rita only wanted their own time with their grandchildren, but Brent admitted that he wanted Amy to bring the children to his home and leave them there without Amy being present. 

Rita Langman testified that T.L. had just turned three and P.L. was three months old when her son died.  Before Rhett died, she saw T.L. two to three times a month; she and Brent babysat for T.L. and P.L.  She had a very close relationship with T.L.  They used to all vacation together.  After Rhett died, their relationship with Amy became strained.  She asked Amy once if there was a problem, and Amy told her that she and Brent would not do what she asked them to do when they babysat.  Amy asked her to telephone her ahead of time if she wanted to visit the children.  Rita said she then began to call first, but that she seldom got a phone call back.  She wanted to see her grandchildren more often.

On cross-examination, Rita said that Amy was doing a good job raising the children.  She knew that Amy criticized her because of the "shower incident."  Rita said that they had two bathtubs in their house, but T.L. wanted to shower, so Brent showered with him.  This upset Amy.  

Brent was recalled as a witness. He testified that he raised two children, Brent and Rhett.  His son Brent visits the house once or twice a month.  When he visits, he stays overnight with his friend, Ray Bonovini.  Brent and Ray had been in the home when T.L. and P.L. visited, but they never stayed overnight on the same night.  When questioned about showering with T.L., Brent admitted that he had showered with T.L. about six times.  He said that Rhett let T.L. shower with him and that Amy never objected. 

Amy testified on her own behalf that she had good reasons for not wanting the children to go to Rita and Brent's house unsupervised.  She said that she told Rita that she did not want T.L. showering with Brent, but that it continued to happen.  She was concerned that her brother-in-law was a homosexual.  She said that Rita and Brent engage in "family feuds" with other family members and do not talk for months to those relatives.  Amy did not want her children to be part of that environment.

Upon questioning by the court, Amy testified that she had moved to Missouri because she and her children needed a fresh start and a place they could be happy.  She wanted any visitation to be supervised by her and at her home.  She did not want overnight visits, but noted that Rita and Brent had family in St. Louis.

After hearing all the evidence, the trial court issued its order with an accompanying memorandum.  In its memorandum, the court noted that all the parties were responsible, moral and caring people.  The court acknowledged that Amy did not object to visitation, but had requested supervised visitation.  The trial judge noted that it could not do more than balance the rights of the parent and grandparents.  In reviewing the facts, the court said that it did not believe Amy's concerns were justified regarding Brent showering with T.L. or associating with his homosexual uncle.  It then set up a visitation schedule which would eventually allow Rita and Brent unsupervised visitation for one full weekend each month. 

On appeal, Amy first argues that section 607(b)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act) is unconstitutional as applied in this case.  750 ILCS 5/607(b)(1) (West 1998). The Act provides in part:

"(b)(1) The court may grant reasonable visitation privileges to a grandparent, great-grandparent, or sibling of any minor child upon petition to the court by the grandparents or great-grandparents or on behalf of the sibling, with notice to the parties required to be notified under Section 601 of this Act, if the court determines that it is in the best interests and welfare of the child, and may issue any necessary orders to enforce such visitation privileges.  Except as provided in paragraph (2) of this subsection (b), a petition for visitation privileges may be filed under this paragraph (1) whether or not a petition pursuant to this Act has been previously filed or is currently pending if one or more of the following circumstances exist:

(A) the parents are not currently cohabitating on a permanent or an indefinite basis;                         (B) one of the parents has been absent from the marital abode for more than once month without the spouse knowing his or her whereabouts;                   (C) one of the parents is deceased;       (D) one of the parents joins in the petition with the grandparents, great-grandparents, or sibling; or              (E) a sibling is in State custody."       750 ILCS 5/607(b)(1) (West 1998).        

Parents have a fundamental constitutional right to make decisions concerning the care, custody, and control of their children.  
Troxel v. Granville
, 530 U.S. 57, 147 L.Ed.2d 49, 120 S.Ct. 2054 (2000).  By allowing the state to override the decisions of parents regarding the upbringing of their children, section 607(b)(1) of the Act significantly interferes with the fundamental rights of parents.  
Lulay v. Lulay
, 193 Ill. 2d 455, 739 N.E.2d 521 (2000).  Therefore, the constitutionality of section 607(b)(1) of the Act must be evaluated under a strict scrutiny analysis.  
Lulay
, 193 Ill. 2d at 476, 739 N.E.2d at 532.  To withstand the strict scrutiny test, a statute must serve a compelling state interest, and the statute must be narrowly tailored to serve the compelling interest.  
Lulay
, 193 Ill. 2d at 476, 739 N.E.2d at 532.  Both the United States Supreme Court and our supreme court have analyzed various of the following factors to determine whether a grandparent visitation statute is unconstitutional as applied to the facts of a particular case: (1) who may bring the action; (2) whether the grandparents alleged, or the trial court found, that the parent was unfit; (3) whether the grandparents alleged that the parent sought to terminate visitation entirely; and (4) whether the trial court gave any special weight to the parent's determination of the children's best interests.  See 
Troxel v. Granville
, 530 U.S. 57, 147 L.Ed.2d 49, 120 S.Ct. 2054 (2000); 
Lulay v. Lulay
, 193 Ill. 2d 455, 739 N.E.2d 521 (2000).    

We initially note that Brent and Rita argue that Amy has waived the issue of the constitutionality of section 607(b)(1) of the Act because she did not raise it before the trial court.  750 ILCS 5/606 (b)(1) (West 1998).  However, waiver is a limitation on the parties and not on the courts.  A reviewing court may ignore the waiver rule in order to achieve a just result.  
In re Janet S.
, 305 Ill. App. 3d 318, 712 N.E.2d 422 (1999).  Although Amy did not raise the constitutionality of the statute below, the trial court did raise it and ruled on it.  Therefore, in the interest of justice, we will review this issue.

Section 607(b)(1) is more narrow than the statute in 
Troxel v. Granville
, 530 U.S. 57, 147 L.Ed.2d 49, 120 S.Ct. 2054 (2000).  In that case, the United States Supreme Court reviewed a Washington statute which permitted any party to petition the court for visitation rights of minor children and for the court to award such rights if it found them to be in the best interest of the children.  
Troxel
, 530 U.S. at 57, 147 L.Ed.2d at 49, 120 S. Ct. at 2054.  In our case, section 607(b)(1) of the Act only authorizes grandparents, great-grandparents, or siblings to petition the court for such rights.  750 ILCS 5/607(b)(1) (West 1998).  Therefore, the first factor is not problematic and the statute is not over broad.

However, we find that the remaining three factors make section 607(b)(1) unconstitutional as applied in this case.  First, neither the grandparents nor the trial court alleged that Amy was an unfit parent.  To the contrary, Rita believed that Amy was a good mother, and the trial court described all of the parties as responsible, moral and caring people.  As our supreme court has recently noted, this issue is pivotal because a court must presume that a fit parent acts in the best interests of her children.  
Lulay
, 193 Ill. 2d at 462, 739 N.E.2d at 525, citing 
Troxel v. Granville
, 530 U.S. 57, 147 L.Ed.2d 49, 120 S.Ct. 2054 (2000).  

Next, Rita and Brent did not allege that Amy sought to terminate their visitation with T.L. and P.L. entirely.  Amy simply sought to limit their visitation to supervised visits in her home.

Finally, the trial court did not give any special weight to Amy's determination of the her children's best interests.  It is clear from the court's memorandum order that it disagreed with Amy's decisions about T.L. showering with Brent or associating with a homosexual uncle.  The court stated: 

"She objected to her young son, then little more than a toddler, showering with his grandfather in a large open shower on the farm.  She also apparently objects to the children being with their uncle who is a homosexual.  No evidence was produced that the uncle ever placed either child in any danger, merely that he was a homosexual and had a partner.  As to the showers with grandfather, no evidence was presented that these acts frightened, upset or endangered the child, [T.L.]."

Again, even if the court disagreed with Amy on these issues, it is Amy's fundamental right as a parent to determine with whom her children may bathe and also with whom they may associate.  See 
Troxel v. Granville
, 530 U.S. 57, 147 L.Ed.2d 49, 120 S.Ct. 2054 (2000) (parents have a fundamental constitutional right to make decisions concerning the care, custody, and control of their children).  The trial court did not give any special weight to Amy's determination, and specifically noted that its task was to balance the right of the parent and the grandparents in this case.

For these reasons, 
we hold that the facts in this case do not warrant the state's interference with a parent's decision regarding who may have visitation with her children.  Section 607(b)(1) of the Act, as interpreted and applied to this case, does not serve a compelling state interest and, therefore, does not satisfy the strict scrutiny test.  Accordingly, section 607(b)(1) of the Act, as applied to this case, is an unconstitutional infringement on Amy's fundamental liberty interest in raising her children.  

Next, Amy argues that section 607(b)(1) of the Act is facially unconstitutional.  750 ILCS 5/607(b)(1) (West 1998).  Because we hold that section 607(b)(1) of the Act as applied to this case is unconstitutional, we need not address this argument.  See 
Lulay v. Lulay
, 193 Ill. 2d at 480, 739 N.E.2d at 534.  Our holding is also dispositive of her third issue, that the trial court's visitation schedule was against the manifest weight of the evidence. 

Brent and Rita argue that even if section 607(b)(1) of the Act is unconstitutional, the visitation order is authorized under Illinois common law.  To support their contention, they cite to the factually analogous case of 
Boyles v. Boyles
, 14 Ill. App. 3d 602, 302 N.E.2d 199 (1973). 

Prior to the legislature's enactment of section 607(b)(1), Illinois common law provided visitation rights to grandparents if there was a showing of "special circumstances."  
Chodzko v. Chodzko
, 66 Ill. 2d 28, 360 N.E.2d 60 (1976).  Rita and Brent have cited no authority for the proposition that grandparents whose child has died and who have been granted limited visitation rights to their grandchildren by the surviving parent may be awarded additional visitation rights as a "special circumstance."  
Boyles v. Boyles
, (14 Ill. App. 3d 602, 302 N.E.2d 199 (1973)), is contrary to current law.  In 
Boyles
, the court held, "We believe where a parent has died, the continuation of the relationship between a child and grandparents, which may be promoted by visitation, may be a positive benefit affecting the best interest of the child."  
Boyles
, 14 Ill. App. 3d at 604, 302 N.E.2d at 201.  This standard conflicts with the law stated by the United States Supreme Court as well as our supreme court that a court must presume that a fit parent acts in the best interest of her children.  See 
Troxel v. Granville
, 530 U.S. at 68, 120 S.Ct. at 2061, 147 L.Ed.2d at 58; 
Lulay v. Lulay
, 193 Ill. 2d at 461, 639 N.E.2d at 525.  Therefore, we will not authorize this visitation order under common law.

The judgment of the circuit court of Kankakee County is reversed.

Reversed.   
 

BRESLIN and McDADE, J.J., concur.