(No. 92048  (No. 92135

# VIRGINIA WICKHAM, Appellee, v. PAUL MICHAEL BYRNE, Appellant.—BRENT LANGMAN et al., Appellants, v. AMY LANGMAN, Appellee.

*Opinion filed April 18, 2002.*

GARMAN, J., concurring in part and dissenting in part.

310

Michael Kevin Goldberg, Robert A. Bauerschmidt and Gerald G. Goldberg, of Goldberg & Frankenstein, L.L.C., of Chicago, for appellant.

No appearance for appellee.

Adrienne W. Albrecht, of Sacks, Albrecht & Gubbins, of Kankakee, for appellants.

Richard W. Zuckerman, of Peoria, for appellee.

Patricia M. Logue, of Chicago, for *amicus curiae* Lambda Legal Defense and Education Fund, Inc.

JUSTICE FITZGERALD delivered the opinion of the court:

At issue in these consolidated cases is whether certain provisions of section 607 of the Illinois Marriage and Dissolution of Marriage Act (Act), commonly called the grandparent visitation statute, violate a parent's due process rights. See 750 ILCS 5/607(b)(1), (b)(3) (West 2000).

## BACKGROUND

### The Wickham Petition

Paul Michael Byrne (Paul) and Lizabeth Wickham Byrne (Lizabeth) were married and had one child, J.B., born November 7, 1997. Lizabeth died September 14, 1998. In her last will and testament, Lizabeth expressed

a wish for frequent visitation between J.B. and her mother, Virginia Wickham (Virginia). After Lizabeth's death, Paul agreed to maintain the relationship between Virginia and J.B., often driving J.B. 50 minutes to Virginia's home. Virginia, however, requested more time with J.B. and asked Paul to allow unsupervised overnight visits. Paul offered to drive J.B. for visits when his schedule permitted, but refused to leave J.B. with Virginia unsupervised and overnight. Unable to resolve the conflict, Virginia filed a petition in the circuit court of Cook County for grandparent visitation under section 607(b)(1) of the Act. In her petition, Virginia requested mandatory overnight visitation with J.B. two full weekends a month.

Initially, Paul moved to dismiss the petition based upon decisions of the United States Supreme Court and this court. See *Troxel v. Granville*, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000) (plurality opinion); *Lulay v. Lulay*, 193 Ill. 2d 455 (2000). Paul argued that section 607(b)(1) of the Act violated the due process clauses of the Illinois and United States Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §§ 1, 2. The trial court denied the motion.

At the hearing on Virginia's petition, the court heard testimony from Paul, Virginia, and J.B.'s pediatrician. Prior to ruling, the court stated that "[t]he standard to be used in grandparent's visitation is the best interest of the child. Generally, it's presumed that a relationship with a grandparent is in the best interest of the child." However, the court held that Virginia's attempts to undermine the relationship between Paul and J.B. by filing frivolous and unfounded complaints with the Department of Children and Family Services and interfering with J.B.'s pediatric care without Paul's consent warranted limited visitation. Thus, the court denied overnight visitation, but ordered supervised visitation with

J.B. at Paul's home four hours a week. The trial court appointed a child representative and set the case for status in 60 days.

Following the trial court order, Paul filed an "Amended Motion to Dismiss Complaint" and renewed his argument based upon *Troxel* and *Lulay*. The trial court again denied the motion, finding that:

> "[T]he state may have a compelling interest in ordering visitation between J.B. and Ms. Wickham over Mr. Byrne's objection.
>
> * * *
>
> Mr. Byrne has not shown that the asserted state interest in requiring him to permit Ms. Wickham to visit with J.B. is either illusory or not compelling. Under these circumstances, this court holds that, as applied to the facts of this case as developed thus far, Section 607(b)(1) does not violate Mr. Byrne's constitutional parental rights."

Paul filed an application for an interlocutory appeal under Illinois Supreme Court Rule 308. See 155 Ill. 2d R. 308. The appellate court denied Paul's application. We granted Paul's petition for leave to appeal. See 177 Ill. 2d R. 315(a).

### The Langman Petition

Amy and Rhett Langman were married and had two children, T.L., born September 3, 1995, and P.L., born June 25, 1998. Rhett died on September 20, 1998. Prior to Rhett's death, his parents, Rita and Brent Langman (Rita and Brent), maintained a close relationship with their grandchildren, seeing the children two to three times a month. Immediately after Rhett's death, Rita and Brent continued this relationship by baby-sitting the children each Tuesday night so that Amy could attend social activities. Rita and Brent asked Amy for more time with the children, including overnight visits. Amy rejected the idea and told Rita and Brent that she was unhappy with their refusal to follow her directions when

they baby-sat the children. Amy also explained to Rita and Brent that she was uncomfortable with their home environment and the children's exposure to their uncle's lifestyle. Amy agreed to visitation, but she demanded Rita and Brent visit the children at her home, while she was present.

Unable to resolve their differences, Rita and Brent filed a petition in the circuit court of Kankakee County for grandparent visitation under section 607(b)(1). The petition stated, in part: "That it is in the minor children's best interest that the Petitioners [Rita and Brent] be allowed specific visitation with them outside of the presence of the Respondent [Amy] in order to further and foster the close family relationship that they previously shared and in order that they grow up sharing the love and concern of their father's family as well as that of their mother." After Rita and Brent filed their petition for visitation, Amy moved to Missouri, six hours away from Rita and Brent, with the children to make a fresh start, telling Rita and Brent, "I don't come back for my own family and I don't come back for my friends."

On March 17, 1999, at the hearing on the petition for visitation, 17 witnesses testified. Additionally, the parties submitted written closing arguments to the court, which included suggested visitation schedules. On August 2, 2000, the trial court issued its order with an accompanying memorandum. In its memorandum, the trial court stated:

"[T]estimony revealed the mother is a loving caring mother who wishes to protect her children from exposure to things she feels are in appropriate [sic].

\* \* \*

All of the parties are responsible, moral and caring people. The children's mother does not object to visitation but only on her terms, which appear to be supervised visits in her presence.

This is a particularly difficult case because all of the

parties believe they are doing what is in the best interest of the children. The Court can not do more than balance the right of the parent and grandparents. The State of Illinois has sought to protect relationships children have with their grandparents yet it also must protect the rights of a parent to whose preliminary right and responsibility it is to care for and nurture their children.

The real test, in the best interest of the children, is the test that must be applied here. It has been the law of Illinois for over 30 years that when considering the best interest of the children the Court must look at 'all matters that have a bearing upon the welfare of the child.' "

The trial court continued: "[T]here is a strong indication that unsupervised grandparental visitation would be of great benefit to the children. Their father is deceased, his surviving family is the only connection the children can have with those who had an intimate and close family relationship." The trial court ordered visitation, beginning gradually with afternoon visits, and eventually leading to unsupervised visits one full weekend each month. The trial court ordered that Amy split the costs of transportation with Rita and Brent. Further, the trial court ordered telephone contact one day a week for up to 15 minutes. Amy appealed.

The appellate court reversed the trial court order. 325 Ill. App. 3d 101, 108. Citing to *Troxel* and *Lulay*, the appellate court held that section 607(b)(1) of the Act, as applied in this case, unconstitutionally infringed on Amy's fundamental right to make decisions concerning the care, custody, and control of her children. 325 Ill. App. 3d at 107. The appellate court declined to consider whether section 607(b)(1) is facially unconstitutional. 325 Ill. App. 3d at 107.

We granted Rita and Brent's petition for leave to appeal and consolidated these cases.

### ANALYSIS

Less than two years after our decision in *Lulay*, we

are asked again to consider the constitutionality of the Act. In *Lulay*, we held that section 607(b)(1), as applied to the parents' joint decision to deny grandparent visitation, unconstitutionally infringed on their "well-established fundamental liberty interest in making decisions regarding the upbringing of their children." *Lulay*, 193 Ill. 2d at 479. In the instant matter, we address the constitutionality of sections 607(b)(1) and (b)(3) in the context of a single parent's decision concerning visitation with a deceased spouse's parents.

Citing to *Troxel* and *Lulay*, Paul and Amy argue that sections 607(b)(1) and (b)(3) as applied to a single parent's decision regarding grandparent visitation violate a parent's fundamental constitutional right to make decisions concerning the care, custody, and control of his or her children. Additionally, Paul argues that sections 607(b)(1) and (b)(3) are facially unconstitutional.

Section 607(b) states, in pertinent part:

"(b)(1) The court may grant reasonable visitation privileges to a grandparent, great-grandparent, or sibling of any minor child upon petition to the court by the grandparents or great-grandparents or on behalf of the sibling, with notice to the parties required to be notified under Section 601 of this Act, if the court determines that it is in the best interests and welfare of the child, and may issue any necessary orders to enforce such visitation privileges. Except as provided in paragraph (2) of this subsection (b), a petition for visitation privileges may be filed under this paragraph (1) *** if one or more of the following circumstances exist:

(A) the parents are not currently cohabiting on a permanent or an indefinite basis;

(B) one of the parents has been absent from the marital abode for more than one month without the spouse knowing his or her whereabouts;

(C) one of the parents is deceased;

(D) one of the parents joins in the petition with the grandparents, great-grandparents, or sibling; or

(E) a sibling is in State custody.

* * *

(3) When one parent is deceased, the surviving parent shall not interfere with the visitation rights of the grandparents." 750 ILCS 5/607(b) (West 2000).

Under Illinois law, statutes carry a strong presumption of constitutionality. *People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 120 (2001); *People v. Sanders*, 182 Ill. 2d 524, 528 (1998). Whenever reasonable, courts must construe a statute to uphold its constitutional validity. *World Church of the Creator*, 198 Ill. 2d at 120; *Sanders*, 182 Ill. 2d at 528. A statute is facially invalid only if the party challenging the enactment can establish " 'that no set of circumstances exists under which the Act would be valid.' " *In re C.E.*, 161 Ill. 2d 200, 210-11 (1994), quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987). We review *de novo* the constitutionality of the Act. *Lulay*, 193 Ill. 2d at 469.

The fourteenth amendment of the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. The due process clause grants "heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720, 138 L. Ed. 2d 772, 787, 117 S. Ct. 2258, 2267 (1997). One of the fundamental rights protected under the fourteenth amendment is the right of parents to make decisions concerning the care, custody, and control of their children without unwarranted state intrusion. *Troxel*, 530 U.S. at 66, 147 L. Ed. 2d at 57, 120 S. Ct. at 2060; *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 606, 102 S. Ct. 1388, 1394-95 (1982); *Parham v. J.R.*, 442 U.S. 584, 602, 61 L. Ed. 2d 101, 118, 99 S. Ct. 2493, 2504 (1979); *Quilloin v. Walcott*, 434 U.S. 246, 255, 54 L. Ed. 2d 511, 519, 98 S. Ct. 549, 554-55 (1978); *Stanley v. Illinois*, 405 U.S. 645, 651, 31 L. Ed. 2d 551, 558, 92 S. Ct.

1208, 1212-13 (1972); *Wisconsin v. Yoder*, 406 U.S. 205, 232, 32 L. Ed. 2d 15, 35, 92 S. Ct. 1526, 1541-42 (1972); *Prince v. Massachusetts*, 321 U.S. 158, 165-66, 88 L. Ed. 645, 652, 64 S. Ct. 438, 442 (1944); *Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35, 69 L. Ed. 1070, 1078, 45 S. Ct. 571, 573 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399, 67 L. Ed. 1042, 1045, 43 S. Ct. 625, 626 (1923). Decisions concerning care, custody, and control include, for example, decisions about a child's education, religion, and general upbringing. See *Lulay*, 193 Ill. 2d at 471-72. State interference with fundamental parental childrearing rights is justified in limited instances to protect the health, safety, and welfare of children. See, *e.g.*, *Prince*, 321 U.S. at 166-67, 88 L. Ed. at 653, 64 S. Ct. at 442 ("the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare"). Under Illinois law, examples of these limited instances include: required testing for phenylketonuria at birth (410 ILCS 240/1 (West 2000)); required immunization for diphtheria, pertussis, and tetanus (410 ILCS 315/2 (West 2000)); required hearing and visual examinations (410 ILCS 205/1 *et seq.* (West 2000)); and prohibited child labor (820 ILCS 205/1 *et seq.* (West 2000)).

The petitioning grandparents argue that under the Act, the trial judge steps into the shoes of the deceased parent to protect and maintain the children's family heritage. This argument overlooks the clear constitutional directive that state interference should only occur when the health, safety, or welfare of a child is at risk. The issue we address does not involve a threat to the health, safety, or welfare of children. Unlike the statutes concerning inoculation or immunization, sections 607(b)(1) and (b)(3) involve visitation and a parent's decision to control who may interact with his or her children. Additionally,

the United States Supreme Court does not limit the fundamental right to make decisions concerning the care, custody, and control of children to decisions made by joint parents: "This Court's decisions have by now made plain beyond the need for multiple citation that a parent's desire for and right to 'the companionship, care, custody, and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' " *Lassiter v. Department of Social Services*, 452 U.S. 18, 27, 68 L.Ed 2d 640, 649-50, 101 S.Ct. 2153, 2159-60 (1981), quoting *Stanley*, 405 U.S. at 651, 31 L. Ed. 2d at 558, 92 S. Ct. at 1212-13. To the contrary, the United States Supreme Court recently recognized the changing demographics of the average American family, including the increasing number of single-parent households. *Troxel*, 530 U.S. at 64, 147 L. Ed. 2d at 55, 120 S. Ct. at 2059 ("In 1996, children living with only one parent accounted for 28 percent of all children under age 18 in the United States"). We, therefore, reject any argument that single parents are entitled to less constitutional liberty in decisions concerning the care, custody, and control of their children.

Although the appellate court examined the constitutionality of section 607(b)(1) as applied to a single parent's decision to limit grandparent visitation, we are compelled to examine the overall constitutional validity of the statute. We begin with the *presumption* that a fit parent's decision to deny or limit visitation is in the child's best interests. See *Troxel*, 530 U.S. at 68, 147 L. Ed. 2d at 58, 120 S. Ct. at 2061 ("there is a presumption that fit parents act in the best interests of their children"); see *Parham*, 442 U.S. at 602, 61 L. Ed. 2d at 118, 99 S. Ct. at 2504; *Lulay*, 193 Ill. 2d 455.

"	'The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making

life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children.' " *Troxel*, 530 U.S. at 68, 147 L. Ed. 2d at 58, 120 S. Ct. at 2061, quoting *Parham*, 442 U.S. at 602, 61 L. Ed. 2d at 118, 99 S. Ct. at 2504.

In *Troxel*, a mother limited visitation between her children and their paternal grandparents, after the father of her children committed suicide. The paternal grandparents petitioned for visitation under a Washington state visitation statute, and the United States Supreme Court examined the constitutional validity of that statute. Ultimately, the Court held that the statute was unconstitutional because it allowed "*any* third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review." (Emphasis added.) *Troxel*, 530 U.S. at 67, 147 L. Ed. 2d at 57, 120 S. Ct. at 2061. The statute was held unconstitutional because it was "breathtakingly broad." *Troxel*, 530 U.S. at 67, 147 L. Ed. 2d at 57, 120 S. Ct. at 2061.

The Court also discussed a second statutory flaw: "the Washington statute places the best-interest determination solely in the hands of the judge." *Troxel*, 530 U.S. at 67, 147 L. Ed. 2d at 57, 120 S. Ct. at 2061. The Court criticized the considerable discretion the judge could exercise under the statute, stating that "it gave no special weight at all to [the mother's] determination of her daughters' best interests." *Troxel*, 530 U.S. at 69, 147 L. Ed. 2d at 58, 120 S. Ct. at 2062. The Washington statute undermined the parent's fundamental right to make decisions regarding the care and custody of her child because the parent's decision regarding visitation was no longer presumed to be in the child's best interests. *Troxel*, 530 U.S. at 69-70, 147 L. Ed. 2d at 59, 120 S. Ct. at 2062. Instead, that decision was debated by the parties to the litigation before a judge, with the parent

placed on equal footing with those seeking visitation privileges. *Troxel*, 530 U.S. at 69, 147 L. Ed. 2d at 58, 120 S. Ct. at 2062. In making visitation decisions, however, the parent is not on equal footing with those seeking visitation privileges.

> "In an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent's decisions of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." *Troxel*, 530 U.S. at 70, 147 L. Ed. 2d at 59, 120 S. Ct. at 2062.

The Court did not reject the significance of the relationship between grandparents and their grandchildren; it simply acknowledged the presumption that a parent's decision regarding visitation is in the children's best interest.

Section 607(b)(1) contains a similar flaw to the statute at issue in *Troxel*. Section 607(b)(1) permits grandparents, great-grandparents, or the sibling of any minor child visitation if "the court determines that it is in the best interests and welfare of the child." 750 ILCS 5/607(b)(1) (West 2000). Like the statute in *Troxel*, section 607(b)(1), in every case, places the parent on equal footing with the party seeking visitation rights. Further, like the statute in *Troxel*, section 607(b)(1) directly contravenes the traditional presumption that parents are fit and act in the best interests of their children. The statute allows the "State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Troxel*, 530 U.S. at 72-73, 147 L. Ed. 2d at 61, 120 S. Ct. at 2064. Section 607(b)(1) exposes the decision of a fit parent to the unfettered value judgment of a judge and the intrusive micromanaging of the state. Because

we can conceive of no set of circumstances under which section 607(b)(1) of the Act would be valid, we hold that it is unconstitutional on its face. For the same reasons, we hold that section 607(b)(3) is facially unconstitutional.

Our holding does not depart from the previous decision of this court in *Lulay*. In *Lulay*, we held that section 607(b)(1) was unconstitutional as applied to the parents' joint decision to deny or limit visitation. *Lulay*, 193 Ill. 2d at 479-80. Our decision rested upon the principle that parents maintain an established fundamental liberty interest in making decisions regarding the care, custody, and control of their children. *Lulay*, 193 Ill. 2d 455. We declined to address facial invalidity merely because the issue was "outside the scope of the certified question." *Lulay*, 193 Ill. 2d at 480. Yet, importantly, we recognized the presumption that fit parents act in the best interest of their children. *Lulay*, 193 Ill. 2d at 479. In the instant matter, we are expressly asked to consider whether the statute is invalid on its face.

Furthermore, our holding does not disregard the value of a meaningful relationship between a grandparent and grandchild. In most cases, the relationship between a child and his or her grandparents is a nurturing, loving relationship that provides a vital connection to the family's history and roots. However, as with all human relationships, conflicts may arise between a child's parents and grandparents. In many cases, this conflict will concern disagreements about how a parent is raising his or her children. Yet, this human conflict has no place in the courtroom. This is true even where the intrusion is made in good conscience, such as the request for visitation to preserve the child's only connection to a deceased parent's family. Parents have the constitutionally protected latitude to raise their children as they decide, even if these decisions are perceived by some to be for arbitrary or wrong reasons. The presump-

tion that parents act in their children's best interest prevents the court from second-guessing parents' visitation decisions. Moreover, a fit parent's constitutionally protected liberty interest to direct the care, custody, and control of his or her children mandates that parents—not judges—should be the ones to decide with whom their children will and will not associate.

## CONCLUSION

For the foregoing reasons, we hold that sections 607(b)(1) and 607(b)(3) of the Act are facially unconstitutional. For this reason, we need not address the appellate court's holding that section 607(b)(1) is unconstitutional as applied. We affirm the judgment of the appellate court in *Langman*, No. 92135, and reverse the order of the trial court in *Wickham*, No. 92048.

*No. 92048—Reversed.*
*No. 92135—Affirmed.*

JUSTICE GARMAN, concurring in part and dissenting in part:

When this court last considered the constitutionality of this statute, three justices would have found the statute unconstitutional on its face. *Lulay*, 193 Ill. 2d at 480-82 (Heiple, J., specially concurring); *Lulay*, 193 Ill. 2d at 482-83 (Rathje, J., specially concurring, joined by Heiple and Freeman, JJ.) (concluding that the statute is facially unconstitutional because the "fatal flaw *** will be present in every section 607(b)(1) case" (emphasis omitted)). Thus, at the time this court considered *Lulay*, we were aware that each subsection of section 607(b) was vulnerable to the same criticism—that the state lacked a compelling interest to justify this significant intrusion into the decision making of fit parents. The majority reaches the question left unanswered in *Lulay*, whether the entire section must be found unconstitutional on its face, and answers that question in the affirmative.

A statute is facially unconstitutional if " ' "no set of circumstances exists under which the Act would be valid." ' " *In re R.C.*, 195 Ill. 2d 291, 297 (2001), quoting *In re C.E.*, 161 Ill. 2d 200, 210-11 (1994), quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987). I agree with the majority that section 607(b)(3) is unconstitutional on its face. This provision states that when one parent has died, the surviving parent "shall not interfere" with the grandparents' rights to visitation. 750 ILCS 5/607(b)(3) (West 2000). Because a fit parent is constitutionally entitled to the presumption that he or she is acting in the child's best interest (*Troxel*, 530 U.S. at 69-70, 147 L. Ed. 2d at 59, 120 S. Ct. at 2062), this provision, which purports to limit the decisionmaking capability of a fit parent in order to protect "rights" of grandparents, without first requiring rebuttal of the presumption, is unconstitutional on its face.

Section 607(b)(1), however, is another matter. While this section defines a rather narrow class of persons who may bring petitions for visitation—grandparents, great-grandparents, and siblings—it does not limit the class of persons who may be named respondents in such actions. 750 ILCS 5/607(b)(1) (West 2000). Logically, any person who exercises guardianship or custody over a minor child might be named a respondent in a petition for visitation brought pursuant to this section. Thus, it is easily possible to conceive of a set of circumstances in which this section could be validly applied. 199 Ill. 2d at 320-21.

Consider, for example, the case of a young family involved in a tragic automobile accident that kills the father and leaves the mother so severely injured that her parents seek and are given custody and guardianship of the child. Perhaps blaming their late son-in-law for the accident, the maternal grandparents refuse to permit visitation with the paternal grandparents. Section 607(b)(1)(C) confers standing upon the paternal grand-

parents to seek visitation by filing a petition naming the maternal grandparents as respondents. 750 ILCS 5/607(b)(1)(C) (West 2000). Yet, by declaring the statute unconstitutional on its face, the majority has implicitly held that the custodial grandparents in this example have the same fundamental rights to the care, custody, and control of the child as natural or adoptive parents, that they are constitutionally entitled to the benefit of the presumption that they are acting in the best interests of the child, and that the state may not interfere in their decisionmaking unless the interference is narrowly tailored to meet a compelling state interest. This implicit holding, moreover, has implications far beyond visitation disputes.

In my opinion, when the respondent in the visitation action is a nonparent, the statute could be constitutionally applied because the nonparent respondent would not be exercising a fundamental constitutional right and, thus, strict scrutiny would not apply. In other words, unlike a natural or adoptive parent, a nonparent custodian or guardian is not constitutionally entitled to the presumption that he or she is acting in the best interest of the child. Without necessarily concluding that section 607(b)(1), as applied to nonparent respondents, meets the rational basis test, I am unwilling to prejudge this issue by finding this provision unconstitutional on its face.

The majority is inclined to resolve the constitutional question once and for all so that piecemeal litigation is not required to invalidate the statute. However, by declaring this section facially invalid, the majority has implicitly declared that nonparent custodians or guardians have fundamental constitutional rights equal to those of parents. This question was not presented by either of the consolidated cases, nor was it briefed or argued. There is no need for the court to go so far.

On the other hand, a good reason exists for narrow-

ing our holding to declaring the statute unconstitutional as applied. At some future date, a nonparent custodian or guardian will stand before an Illinois court asserting a fundamental constitutional right to the care, custody, and control of a child and demanding the benefit of the presumption. That litigant will cite this case as support and we may, at that time, have to undo what was done here.

I firmly believe that we should go only so far as is necessary to resolve the question presented to us in the present case and no further. I, therefore, respectfully dissent from the portion of the opinion that would declare section 607(b)(1) unconstitutional on its face. I would find this provision unconstitutional as applied to any fit parent.