*In re* M.M.D., a Minor (Christopher K. Johnson, Petitioner-Appellant, v. Christopher Duncan *et al.*, Respondents-Appellees).

Third District No. 3—03—0231

Opinion filed November 20, 2003.

SLATER, J., dissenting.

Linda S. Groezinger and Kevin Lowe, both of Lowe & Groezinger, P.C., of West Peoria, for appellant.

John R. Pusey (argued), of Vonachen, Lawless, Trager & Slevin, of Peoria, for appellees.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Christopher Johnson filed a petition in the Peoria County circuit court seeking termination (or alternatively, modification) of an order granting visitation rights to his child's maternal grandparents, Christopher and Sue Duncan. The judge denied his petition and also denied his subsequent motion to reconsider. Johnson filed this appeal claiming the judge erred because the circuit court lacked jurisdiction to enforce the grandparent visitation order. He asserts that the recent holding in *Wickham v. Byrne*, 199 Ill. 2d 309 (2002) (declaring the grandparent visitation statute unconstitutional), voided the visitation order as a matter of law. We affirm the circuit court's judgment.

## BACKGROUND

As early as the 1970s Illinois common law provided visitation rights to grandparents upon a showing of "special circumstances." See *Chodzko v. Chodzko*, 66 Ill. 2d 28 (1976); see also *Hawkins v. Hawkins*, 102 Ill. App. 3d 1037 (1981). The legislature subsequently enacted subsections 607(b)(1) and (b)(3) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/607(b)(1), (b)(3) (West 2000)), authorizing courts to order grandparent visitation upon a finding that such visitation "is in the best interests and welfare of the child." 750 ILCS 5/607(b)(1) (West 2000).

Johnson's wife died while giving birth to M.M.D. on September 30, 1996. M.M.D. subsequently resided in foster care with the Duncans until July 17, 2001. On that date, the circuit court entered an order (1) granting Johnson full and permanent custody of M.M.D., and (2) adopting a written agreement between Johnson and the Duncans regarding the Duncans' visitation rights. Under the visitation portion of the order, the Duncans received visitation rights every Wednesday evening and every other weekend. They were also authorized, *inter alia*, to "inspect [M.M.D.'s] school and medical records and to communicate with teachers, school personnel, counselors, and physicians to discuss [M.M.D.'s] standing and progress." Additionally, Johnson

was required to "continuously advise" the Duncans of M.M.D.'s progress at school and inform them "as soon as possible" of any illness or injury she suffered.

In 2001 this court held that subsection 607(b)(1) of the Act was unconstitutional—as applied to a particular mother—because it interfered with the mother's fundamental right to make decisions about the care, custody, and control of her child. See *Langman v. Langman*, 325 Ill. App. 3d 101 (2001).[1] Despite the unconstitutionality of the statute, the child's grandparents argued that their visitation request should be upheld under the preexisting common law. This court disagreed, stating:

> "Rita and Brent [the grandparents] have cited no authority for the proposition that grandparents whose child has died and who have been granted limited visitation rights to their grandchildren by the surviving parent may be awarded additional visitation rights as a 'special circumstance.' *** Therefore, we will not authorize this visitation order under common law." *Langman*, 325 Ill. App. 3d at 107-08.

In 2002 the Illinois Supreme Court held that subsections 607(b)(1) and (b)(3) of the Act are unconstitutional on their face. See *Wickham*, 199 Ill. 2d 309. The court explained that decisions made by fit parents are constitutionally presumed to serve the best interests of their children. Thus, subsections 607(b)(1) and (b)(3) violate parents' due process rights by allowing circuit courts to displace parental decisions with judges' opinions about the best interests of children. According to the court, "[s]tate interference with fundamental parental childrearing rights is justified [only] in limited instances to protect the health, safety, and welfare of children." *Wickham*, 199 Ill. 2d at 317.

After *Wickham* was decided, Johnson filed a petition in the circuit court seeking termination (or alternatively, modification) of the Duncans' visitation rights. The judge reviewed *Wickham* and other similar cases and observed that Illinois's appellate courts had not invalidated the preexisting common law regarding grandparent visitation. He also noted that the visitation order did not specify whether the Duncans' rights were based on statutory law or common law. Since common law precedent still existed for grandparent visitation, the judge denied Johnson's petition to terminate the Duncans' rights. Rather than outright termination, the judge said the visitation agreement was

---

[1]Using similar reasoning, the United States Supreme Court had already invalidated a Washington statute. See *Troxel v. Granville*, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000). The Illinois Supreme Court later cited *Troxel* as authority for declaring subsection 607(b)(1) unconstitutional as applied. See *Lulay v. Lulay*, 193 Ill. 2d 455 (2000).

"subject to modification just as any other visitation agreement is in Illinois."

Johnson filed a motion to reconsider, which the judge denied. The judge reiterated his conclusion that since the common law had not been repealed, it still provided a "right of [grandparent] visitation under certain special circumstances." At Johnson's request, the judge certified the following question for appellate review:

> "[W]hether this Court [the circuit court] has jurisdiction to enforce a visitation order entered on July 17, 2001 based on common law jurisdiction, or whether, due to the courts' recent decisions of *Wickham v. Byrne* *** and *Langman v. Langman*, the visitation agreement is now void as a matter of law and therefore terminated."

In his application for leave to appeal, Johnson specifically challenged the judge's refusal to terminate the Duncans' visitation rights. No issue regarding modification of their rights has been raised here.

## ANALYSIS

■ Johnson correctly notes that subsections 607(b)(1) and (b)(3) were intended to supercede the common law pertaining to grandparent visitation. See *In re Visitation with C.B.L.*, 309 Ill. App. 3d 888 (1999). However, he fails to acknowledge the legal effect of enacting an unconstitutional statute. Such a statute is void *ab initio* (as if it never existed from its inception). *In re Marriage of Sullivan*, 342 Ill. App. 3d 560 (2003). For this reason, a declaration of unconstitutionality relegates the parties to the rights that existed before the unconstitutional statute was enacted. *Marriage of Sullivan*, 342 Ill. App. 3d 560. Thus, although subsections 607(b)(1) and (b)(3) were intended to supercede the common law, such intent was never realized because the statute was invalid from its inception. Illinois common law still allows courts to order grandparent visitation under "special circumstances."

Having made this observation, we note that the constitutional principles outlined in *Wickham* apply to grandparent visitation in general. Thus, judges must now incorporate those principles when applying the "special circumstances" standard. The Duncans acknowledge this fact in their brief, stating:

> "This court should therefore allow Illinois courts to exercise common law jurisdiction in non-parent visitation cases *so long as the decision making process avoids the constitutional infirmities which the courts found in Troxel, Lulay and Wickham.* *** [Courts] should be free to continue to develop, on a case-by-case basis, standards for non-parental visitation *that avoid [such] infirmities ***.*" (Emphasis added.)

We agree with this statement but advise that the *Wickham* bar is quite high. As noted above, the supreme court declared that "[s]tate

interference with fundamental parental childrearing rights is justified [only] in limited instances to protect the health, safety, and welfare of children." *Wickham*, 199 Ill. 2d at 317.

■ In response to the specific question certified by the trial judge, we hold that the unconstitutionality of subsections 607(b)(1) and (b)(3) does not void the Duncans' visitation rights as a matter of law. However, as a matter of fact, the visitation order must pass scrutiny under the principles articulated in *Wickham*. We express no opinion here about whether the order passes such scrutiny. That determination should originate in the circuit court, and Johnson may elicit it through proceedings to modify the visitation order.

■ Finally, the Duncans assert that Johnson waived his claim by failing to timely appeal the July 17, 2001, visitation order. We do not deem his appeal tardy because the basis for it (invalidation of subsections 607(b)(1) and (b)(3)) did not arise until well after July 17, 2001.

## CONCLUSION

For the foregoing reasons, the judgment of the Peoria County circuit court is affirmed.

Affirmed.

LYTTON, J., concurs.

JUSTICE SLATER, dissenting:

The majority acknowledges that subsections 607(b)(1) and (b)(3) of the Marriage Act, which authorize grandparent visitation, were intended to supercede the common law pertaining to grandparent visitation. The majority also recognizes that those statutory provisions were held unconstitutional in *Wickham*, 199 Ill. 2d 309, 769 N.E.2d 1, as interfering with a parent's fundamental right to make decisions about his child. The majority even admits that "the constitutional principles outlined in *Wickham* apply to grandparent visitation in general." 344 Ill. App. 3d at 348. Yet the majority nevertheless concludes that grandparent visitation is authorized under the common law. Surely, the majority is not suggesting that the courts may, under the guise of common law, do what has been explicitly disallowed by *Wickham*? The visitation agreement in this case was entered into based on a void statute and is therefore also void. It infringes on Johnson's fundamental right to raise his child and cannot be retroactively legitimized by reliance on resurrected common law principles. I dissent.