*In re* GUARDIANSHIP OF BETHANY TEKOA HUSEMAN, an Alleged Disabled Adult (Leonard Huseman, Petitioner-Appellee, v. Sandra Barton, Respondent-Appellant (Bethany Tekoa Huseman, Appellee)).

Fifth District   No. 5—03—0563

Opinion filed June 7, 2005.

Darrell Dunham, of Carbondale, for appellant.

William C. Norton, of Conn, Clendenin & Norton, of Marissa, for appellee Leonard Huseman.

No brief filed for appellee Bethany Tekoa Huseman.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Respondent, Sandra Barton, mother of the alleged disabled adult, Bethany Tekoa Huseman (Tekoa), appeals from stipulated orders of the circuit court of Perry County regarding Tekoa. The orders appealed from were agreed to by respondent and her ex-husband, Leonard Huseman, petitioner. The orders, *inter alia*, found Tekoa disabled, ordered attorney fees to be paid from Tekoa's social security disability benefits, and mandated joint custody and visitation. On appeal, respondent raises the following issues: (1) whether the trial court erred in ordering attorney fees to be paid from Tekoa's social security disability benefits, (2) whether the orders complied with the provisions of the Illinois Probate Act of 1975 (Act) (755 ILCS 5/1—1 *et seq.* (West 2000)), and (3) whether the trial court had jurisdiction to enter the order mandating joint custody. We affirm.

Before we address the issues raised by respondent, we note that petitioner filed a motion to dismiss the appeal on the basis of a lack of jurisdiction. In that motion, petitioner essentially argues that because the appeal is based upon the initial order in which Tekoa was found to be a disabled adult and guardianship was established and because

respondent failed to appeal from that order, this court lacks jurisdiction. We have considered petitioner's argument but find the first order so intrinsic to the second order that we hereby deny petitioner's motion to dismiss the appeal and consider the appeal on its merits.

## BACKGROUND

Tekoa, the alleged disabled adult, was born on September 27, 1983. Petitioner initiated the instant litigation on September 13, 2001, by filing a petition for an adjudication of disability and the appointment of a guardian. The petition requested that a guardian be appointed for the estate of Tekoa due to her diagnosis as a Down's syndrome child. The petition alleged that due to that condition and disability, Tekoa is not able to properly manage her person, estate, or financial affairs. A psychological report from September 1987 confirming that Tekoa has Down's syndrome was attached as "Exhibit A." Petitioner requested that an order be entered directing that Tekoa be properly evaluated by a qualified person or persons and that a report be prepared and filed at least 10 days prior to the hearing in accordance with the provisions found in section 11a—9 of the Act (755 ILCS 5/11a—9 (West 2000)).

On September 25, 2001, the trial court entered an order appointing attorney J. Mark Maclin to serve as Tekoa's guardian *ad litem*. Maclin served in that capacity throughout the proceedings below.

On October 11, 2001, respondent filed an answer and her own petition in which she asked the court to adjudge Tekoa a disabled adult and requested the appointment of a guardian for the person and estate of Tekoa. Respondent's petition specifically alleged that the appointment of a guardian was necessary because Tekoa "has been diagnosed as a Trisome 21 MMI child and person and because of this condition is not able to properly manage her personal and financial affairs." On November 28, 2001, petitioner filed a petition for temporary relief in which he alleged that respondent was refusing to allow him visitation or contact with Tekoa. He sought visitation throughout the pending proceedings.

On December 7, 2001, the trial court appointed an attorney to represent Tekoa pursuant to her written request. The trial court appointed Donald Bigham as Tekoa's attorney. Bigham has served as Tekoa's attorney throughout the proceedings.

On December 11, 2001, the trial court entered an agreed order. The order appointed Dr. Travis, Tekoa's family doctor, to perform the required evaluation and report pursuant to section 11a—9 of the Act. On April 11, 2002, Dr. Travis filed his report. He opined that Tekoa "is partially incapable of making personal [and] *financial* decisions."

(Emphasis in original.) He concluded that the most appropriate living arrangement for Tekoa would be with respondent because she has a close relationship not only with respondent but also with other maternal relatives.

On July 1, 2002, guardian *ad litem* Maclin filed his report. He noted that there was an impasse between Tekoa's parents regarding who should be the guardian, but he also stated, "All parties do agree that a guardian of the person and a guardian of the estate is necessary." Maclin concluded that the guardian of the person should be respondent because Tekoa had lived with respondent her entire life. As for a guardian of the estate, Maclin concluded that either or both of the parents (as coguardians) would be acceptable so long as respondent would have the use of Tekoa's social security disability funds for Tekoa's benefit. Maclin noted his investigation showed that in the past respondent had deliberately thwarted petitioner's visitation. In order to ensure that petitioner receive visitation, Maclin suggested establishing a schedule of visitation similar to the joint-custody-of-a-minor arrangement and that respondent and petitioner "consult with each other regarding any additional schooling, healthcare needs, and other decisions fundamentally affecting Tekoa."

On July 12, 2002, the trial court conducted a final hearing on the petition for an adjudication of disability. Tekoa was present with her attorney, Donald Bigham. The guardian *ad litem* was present. Petitioner and respondent were both present, along with their respective attorneys. All the parties and counsel participated in settlement discussions. After the hearing, the trial judge entered an order consistent with an agreement reached by the parties at the hearing.

On July 16, 2002, the trial judge entered a 12-page order appointing a guardian of the person and estate of Tekoa. In the order, the trial judge noted he had interviewed Tekoa in chambers and consulted with her attorneys, after which all the parties, including the alleged disabled adult, "reached a stipulated settlement and agreement with regard to all issues in this cause." The order found Tekoa to be disabled and appointed respondent as the guardian of her person and petitioner as the guardian of her estate. It ordered petitioner to pay Tekoa's $500 social security benefits to respondent for the care and benefit of Tekoa, ordered Tekoa to reside with both petitioner and respondent on a rotating monthly basis with equal time given to both parents, set up a schedule for visitation, and ordered petitioner to maintain medical coverage for Tekoa, with petitioner and respondent to be equally responsible for any additional health benefits not covered by insurance. It further ordered the attorney fees of Donald Bigham and J. Mark Maclin to be paid from funds appropriated by the state or

county for that purpose, but it noted that if those funds were not available, another hearing would be scheduled to determine how the fees should be paid.

On September 26, 2002, respondent, by and through a new attorney, filed a petition to terminate or modify the order appointing a guardian for the person and estate of Tekoa previously entered on July 16, 2002. The grounds set forth included that there was insufficient evidence to support a finding that Tekoa is disabled and that the court lacked authority to grant petitioner a change in custody and visitation. Petitioner moved to dismiss the petition to terminate on October 15, 2002, and asked that respondent be assessed attorney fees.

On December 27, 2002, the trial court found respondent in contempt for failing to permit visitation as outlined in the September 6, 2002, order. Respondent was sentenced to 60 days in jail and ordered to pay $1,770 in attorney fees. Respondent moved to stay the contempt order and filed a notice of appeal. On February 11, 2003, the trial court temporarily suspended the order of incarceration conditioned upon compliance with the order requiring visitation.

A hearing on respondent's motion to terminate or modify was held on May 22, 2003. During the hearing, respondent filed a voluntary motion to dismiss the petition to terminate or modify, which the trial court granted. The parties reached an agreement and stipulation during the hearing on May 22, 2003. As a part of the agreement, respondent's appeal in the contempt matter was dismissed by this court on June 25, 2003, on respondent's motion. On July 22, 2003, an order was entered that recites the additional agreement and stipulation among the parties reached during the May 22, 2003, hearing. The agreement included removing the reports of several medical professionals from the record. The parties also agreed to "participate in mediation in an attempt and effort to resolve any and all differences that exist between them" regarding the best interests of Tekoa. All the parties stipulated that because no state or county funds were available to pay attorney fees to Tekoa's attorney or her guardian *ad litem*, those fees would be paid at a rate of $200 per month until paid in full from the social security benefits received by petitioner as the guardian of the estate of Tekoa, with all the remaining monthly benefits to be paid to respondent for Tekoa's care. Respondent now appeals from the order of July 22, 2003.

## ANALYSIS

### I

The first issue we are asked to address is whether the trial court

erred in ordering attorney fees to be paid from Tekoa's social security disability benefits. Respondent, relying on section 407(a) of the Social Security Act (42 U.S.C. § 407(a) (2000)), contends that the social security benefits are exempt from the claims of Tekoa's creditors, including the claims of her guardian *ad litem* and her personal attorney. Tekoa chose not to file a brief in this appeal. Petitioner responds that it was not improper for the trial court to approve the voluntary agreement and stipulation of the parties, including the agreement whereby the attorney fees of both the guardian *ad litem* and the personal attorney would be paid from a portion of her social security benefits. We agree with petitioner.

■ Section 407(a), involving social security benefits, provides as follows:

> "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process[ ] or to the operation of any bankruptcy or insolvency law." 42 U.S.C. § 407(a) (2000).

The purpose of the exemption of social security benefits from attachment, garnishment, or other legal process is to protect social security beneficiaries from creditors' claims. *Dionne v. Bouley*, 757 F.2d 1344 (1st Cir. 1985). Section 407(a) does not, however, extend to situations in which the person receiving the social security benefits has voluntarily agreed to the payments.

For example, in *Lopez v. Washington Mutual Bank, FA*, 302 F.3d 900 (9th Cir. 2002), the plaintiffs were account holders of the bank. The plaintiffs had bounced checks and had received social security benefits that were directly deposited into their checking accounts. At the time the plaintiffs opened their accounts, they had executed account agreements in which they agreed to immediately pay an overdraft fee to the bank should there be insufficient funds in their account when a draft was presented. The plaintiffs' complaint alleged that the bank's practice of using directly deposited social security benefits to set off overdrafts and pay overdraft fees was prohibited by section 407(a). The *Lopez* court found that even assuming, *arguendo*, that the bank's conduct in using social security benefits deposited into the accounts of customers with overdraft charges could be regarded as some type of legal or equitable action, it did not violate section 407(a) because there was a complete lack of evidence that customers, in executing the account holder agreements which set forth the bank's overdraft policy, had not voluntarily agreed to having their benefits applied in that fashion. *Lopez*, 302 F.3d at 904.

■ Likewise in the instant case, all the parties, including respondent, who was the guardian of Tekoa's person, and petitioner, who was the guardian of Tekoa's estate, voluntarily agreed to utilize a portion of Tekoa's monthly social security disability benefits to pay for the legal services provided by Tekoa's guardian *ad litem* and personal attorney, who had been appointed by the court to represent Tekoa in this matter. The trial court's order reflected the voluntary agreement reached by the parties after it was discovered that no state or county funds were available to pay the attorney fees. Under the circumstances, the agreement was appropriate.

Old Age, Survivors, and Disability Insurance benefits under Title II of the Social Security Act (42 U.S.C. § 401 *et seq.* (2000)) are generally paid directly to the beneficiary, but the Social Security Administration may distribute them to another individual or entity as the beneficiary's "representative payee." 42 U.S.C. § 405(j)(1)(A) (2000). Such a payee may expend funds "only for the use and benefit of the beneficiary," in a way the payee determines "to be in the [beneficiary's] best interests." 20 C.F.R. § 404.2035(a) (2000). The "best interests" analysis is applicable here.

All the parties agreed that Tekoa is a disabled adult who cannot properly manage her person or her estate. Appointing a guardian *ad litem* and a personal attorney to represent Tekoa was the best possible way to ensure that her best interests were paramount in the outcome of this litigation. Accordingly, we find that the use of Tekoa's social security benefits to pay the attorney fees of her guardian *ad litem* and her personal attorney does not violate section 407(a).

## II

■ The additional issues raised by respondent in this appeal can be addressed together. Respondent argues that the orders issued by the trial court in this matter failed to comply with the requirements of the Act and that the trial court did not have jurisdiction to enter an order which amounted to an order for joint custody. Respondent insists that the parties can neither stipulate to Tekoa being a disabled adult nor stipulate to the court's jurisdiction to award visitation but instead must follow the applicable statutes, including the requirement for a report that makes specific findings (755 ILCS 5/11a—9(a) (West 2000)) or an order for appropriate evaluations to be performed by qualified individuals (755 ILCS 5/11a—9(b) (West 2000)).

While respondent has some arguable points, the basic problem with her position is that the orders from which she appeals were all agreed orders. Respondent does not argue that the orders were the result of fraud or coercion, and the record shows no indication of that.

Tekoa was represented by her own court-appointed attorney and a guardian *ad litem* throughout the proceedings. Respondent, petitioner, Tekoa's attorney, and her guardian *ad litem* all agreed to the orders in question. Thus, we are dealing with a consent decree. See *In re M.M.D.*, 213 Ill. 2d 105, 820 N.E.2d 392 (2004).

In *In re M.M.D.*, a father petitioned for the modification of an order granting the maternal grandparents visitation with the child or for the termination of the order after the supreme court declared Illinois's grandparent visitation statute unconstitutional in *Wickham v. Byrne*, 199 Ill. 2d 309, 769 N.E.2d 1 (2002). The order from which the father appealed incorporated a visitation agreement reached by the parties prior to the statute being ruled unconstitutional in *Wickham*. The father argued that the preexisting agreement approved by the circuit court was invalidated by the *Wickham* ruling. The supreme court disagreed, finding that the visitation agreement there in question did not meet the stringent standards for invalidating a consent decree. The supreme court stated as follows:

"A consent decree is based upon the agreement of the parties and is contractual in nature. [Citation.] It is a recordation of the parties' private agreement, not an adjudication of their rights. Once such a decree has been entered, it is generally binding on the parties and cannot be amended or varied without the consent of each party. [Citation.]

An exception to this rule applies where the contract is void as contrary to public policy. Whether an agreement is contrary to public policy depends on the particular facts and circumstances of the case. [Citation.] The courts are reluctant to restrict the freedom of citizens to make their own agreements. Declaring a contract void and unenforceable is a power the courts therefore exercise sparingly. An agreement will not be held void, as being contrary to public policy, unless it is

' "clearly contrary to what the constitution, the statutes[,] or the decisions of the courts have declared to be the public policy or unless [it is] manifestly injurious to the public welfare." '

[Citations.]" *In re M.M.D.*, 213 Ill. 2d at 114, 820 N.E.2d at 399. Like the agreement in *In re M.M.D.*, the agreed-upon orders here do not meet that stringent standard.

Both petitioner and respondent want to take active roles in the life of their disabled daughter. While petitioner filed the first petition to adjudicate Tekoa disabled, respondent later filed her own petition seeking to adjudicate Tekoa disabled. Not only did both parties agree that a guardianship was necessary, but both attorneys who represented Tekoa agreed that Tekoa was in need of a guardian. The record shows no reason that there should not be a guardianship for Tekoa's person

and estate. The record is void of any showing of fraud or coercion, and we agree with petitioner that respondent should not be allowed to complain that the agreed-to orders fail to comply with statutory requirements or that there was no factual basis for a finding of disability, when respondent, who was at all times represented by an attorney, consented to the orders from which she now appeals.

While we agree that this case is not subject to an award of visitation pursuant to the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2000)) because Tekoa is not a minor,[1] the instant case presents a unique situation due to Tekoa's Down's syndrome. Guardianships are utilized to promote the well-being of the disabled person, to protect him or her from neglect, exploitation, or abuse, and to encourage the development of the disabled person's maximum self-reliance and independence. 755 ILCS 5/11a—3(b) (West 2002). The agreements reached by the parties, including visitation, appear to protect Tekoa and encourage her maximum self-reliance. Visitation will allow each parent to play an active role in Tekoa's life. Given respondent's penchant for changing attorneys, failure to comply with the visitation schedule established by the trial court, and failure to abide by her stipulations, dual custody and visitation are appropriate.

We have reviewed respondent's arguments and conclude that the agreement into which the parties entered with regard to Tekoa is valid and enforceable. If respondent is not happy with the arrangements to which she consented, then the proper course of action is for respondent to file a motion to terminate or modify in accordance with the provisions set forth in section 11a—20 of the Act (755 ILCS 5/11a—20 (West 2002)). We decline to set aside or modify the trial court's orders.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Perry County is affirmed.

Affirmed.

DONOVAN, P.J., and WELCH, J., concur.

---

[1]Unlike *In re Marriage of Dobbs*, 358 Ill. App. 308 (2005), the circuit court had jurisdiction to enter the visitation orders, jurisdiction it would not have had under the Illinois Marriage and Dissolution of Marriage Act.