NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 210215-U

NO. 4-21-0215

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 13, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* GUARDIANSHIP OF A.N.B. | ) | Appeal from the |
| | ) | Circuit Court of |
| (Charles A. and Teresa T., | ) | Champaign County |
| Petitioners-Appellants, | ) | No. 17P108 |
| v. | ) | |
| Daniel B. and Andrea A., | ) | |
| Respondents | ) | Honorable |
| | ) | Ramona Sullivan, |
| (Bonita B., Intervenor-Appellee)). | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Paternal grandmother lacked statutory standing for grandparent visitation under either the Probate Act of 1975 or the Illinois Marriage and Dissolution of Marriage Act.

¶ 2    Petitioners, Charles A. and Teresa T., are the maternal grandparents and co-guardians of A.N.B., born January 16, 2009. They appeal the trial court's order awarding grandparent visitation with A.N.B. to respondent, Bonita B., A.N.B.'s paternal grandmother. On appeal, Charles and Teresa argue (1) Bonita lacked standing to pursue or enforce an order for grandparent visitation, (2) pending adoption proceedings could render the issue of grandparent visitation moot, (3) the court erred by denying their motions to stay the grandparent visitation proceedings due to the pending adoption proceedings, (4) the court utilized the wrong statutory

best interest factors in awarding Bonita grandparent visitation, and (5) the court's decision was against the manifest weight of the evidence. We reverse.

¶ 3                                      I. BACKGROUND

¶ 4        Daniel B. and Andrea A. are A.N.B.'s biological parents. The two were never married. Since birth, A.N.B. resided with and was cared for by Charles and Teresa. Andrea also resided in the home. In April 2017, when A.N.B. was eight years old, Charles and Teresa initiated the underlying guardianship case by filing a petition for "Plenary Guardianship" of A.N.B. In July 2017, the trial court appointed Charles and Teresa as permanent co-guardians of A.N.B.'s person. The court's order stated Daniel raised no objection to the petition and Andrea executed a consent to the guardianship.

¶ 5        In December 2017, an agreed order was entered, setting forth a schedule for Daniel's "visitation," or parenting time, with A.N.B. Specifically, Daniel was granted parenting time with A.N.B. every Saturday from 2 p.m. to 7 p.m., every Wednesday from 4 p.m. to 7:30 p.m., and on various holidays. His parenting time was generally required to occur at his home. From December 2017 to April 2019, Daniel exercised his parenting time with A.N.B. as set forth in the agreed order. Because Daniel was residing with Bonita, his parenting time with A.N.B. often occurred in Bonita's home and, thus, Bonita also spent time with A.N.B.

¶ 6        In April 2019, Daniel stopped exercising his parenting time with A.N.B. A year later, in May 2020, Bonita filed a petition to intervene in the underlying guardianship case, asserting her intention to file a petition for grandparent visitation. The trial court granted Bonita's motion to intervene over the objections of Charles and Teresa.

¶ 7        On October 5, 2020, Bonita filed her two-count petition for grandparent visitation.

In count I of her petition, Bonita sought grandparent visitation under section 602.9 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/602.9 (West 2018)). She alleged she had a close bond with A.N.B. and that she anticipated Daniel would consent to her having visitation. Bonita further alleged that she requested visitation with A.N.B. but Charles and Teresa unreasonably denied her any contact. She maintained the denial of visitation caused A.N.B. "mental or emotional harm," and that visitation between her and A.N.B. was in A.N.B.'s best interests. In connection with count II of her petition, Bonita, alternatively, sought grandparent visitation under section 11-7.1 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/11-7.1 (West 2018)). Count II was based on the same factual allegations as set forth in count I.

¶ 8        On October 20, 2020, Charles and Teresa filed a motion to dismiss, or stay, the proceedings. They asserted Bonita's petition should be dismissed because she lacked standing to seek visitation with A.N.B. under both the Marriage Act and the Probate Act. Alternatively, Charles and Teresa requested to stay the visitation proceedings, noting that on October 13, 2020, they filed a petition to adopt A.N.B. They maintained that if an adoption was entered, the issue of grandparent visitation would be moot. Following a hearing on October 26, 2020, the trial court denied the motion. In December 2020, Charles and Teresa filed a "Renewed Motion to Stay" based on the pendency of adoption proceedings, which the court also denied.

¶ 9        Over four dates in March and April 2021, the trial court conducted evidentiary hearings on Bonita's petition for grandparent visitation. The court heard testimony from Bonita, Daniel, Teresa, Charles, and Jerome Lyke, the court-appointed guardian *ad litem*. Evidence showed Bonita spent time with A.N.B. from December 2017 through April 2019, during Daniel's parenting time. In mid-April 2019, Daniel stopped exercising his parenting time with A.N.B. and

never resumed. Thereafter, Bonita requested visits with A.N.B. from Teresa and Charles on five separate occasions, once in person and four times through text messages. However, Charles and Teresa either declined or ignored her requests. The evidence further showed that Daniel supported Bonita's request for grandparent visitation and that Charles and Teresa did not believe visitation between Bonita and A.N.B. was in A.N.B.'s best interests.

¶ 10        On April 14, 2021, the trial court entered a written order granting Bonita's petition for grandparent visitation and ordering visits to occur every Saturday from 2 p.m. to 7 p.m. and on specified holidays. In reaching its decision, the court initially found the provisions of the Probate Act, rather than the provisions of the Marriage Act, were applicable to Bonita's petition. Citing section 602.9 of the Marriage Act (750 ILCS 5/602.9 (West 2018)), it stated a grandparent could only seek visitation with a minor if there had been "an unreasonable denial of visitation by the parent and if the denial has caused the child undue mental, physical or emotional harm." It noted however, that in the present case, A.N.B. was "not in the custody of a natural or adoptive parent," and, as a result, Bonita was "not required to prove that the denial of visitation has caused harm to [A.N.B.] in order to prevail on a request for grandparent visitation." The court further stated as follows:

    "The presumptions and protections for natural and adoptive parents that are encompassed in [section 602.9 of the Marriage Act] are not applicable in this case. The minor child is in the guardianship of her maternal grandparents. Importantly neither of the child's parents have offered any objection to Bonita's request for visitation. The child's father fully supports the request and testified at length in support of the petition. The child's mother was notified of the proceeding and did

- 4 -

not contest the petition."

Next, citing section 11-7.1 of the Probate Act (755 ILCS 5/11-7.1 (West 2018)), the court further stated as follows:

> "[Under the Probate Act, w]hen both parents of a child are deceased and the child has not been adopted, a grandparent is entitled to visitation unless it is shown that visitation would be detrimental to the best interest and welfare of the minor. [Citation.] If a child has been adopted by a close relative after the death of both parents, a [c]ourt may grant visitation to a grandparent if the grandparent alleges and proves that she has been unreasonably denied visitation with the child and the Court finds that visitation would be in the best interests of the child. [Citation.] The parents in this case are alive, so this section of the Probate Act does not squarely apply to Bonita's request for visitation. The Probate Act is to be liberally construed, and the legislature's failure to anticipate this particular fact pattern does not prohibit Bonita *** from seeking visitation with the child.

> The [c]ourt determines that if a grandparent alleges and establishes that she has been unreasonably denied visitation with a child who is in the guardianship of the child's other grandparents, then the [c]ourt can award visitation if the Court determines that grandparent visitation is in the child's best interests."

¶ 11     Ultimately, the trial court found Bonita established that Charles and Teresa unreasonably denied her requests for visitation with A.NB. and that visitation with her was in A.N.B.'s best interests. In setting forth its reasoning, the court determined Bonita and A.N.B. "developed a positive relationship with each other" during the time period that Daniel exercised

- 5 -

his parenting time. Notably, however, it concluded Bonita had been "unable to establish that [A.N.B.'s] mental, physical, or emotional health suffered specifically from the loss of her relationship with *** Bonita."

¶ 12 This appeal followed.

¶ 13                                 II. ANALYSIS

¶ 14 On appeal, Charles and Teresa challenge the trial court's order granting Bonita grandparent visitation with A.N.B. As stated, they assert (1) Bonita lacked standing to pursue or enforce an order for grandparent visitation, (2) pending adoption proceedings "may" render the issue of grandparent visitation moot, (3) the court erred by denying their motions to stay the grandparent visitation proceedings due to the pending adoption proceedings, (4) the court relied upon the wrong statutory best interest factors in awarding Bonita grandparent visitation, and (5) the court's decision was against the manifest weight of the evidence.

¶ 15                                 A. Standing

¶ 16 "The doctrine of standing requires that a party, either in an individual or representative capacity, have a real interest in the action brought and in its outcome." *In re Estate of Wellman*, 174 Ill. 2d 335, 344, 673 N.E.2d 272, 276 (1996). Its purpose "is to ensure that courts are deciding actual, specific controversies and not abstract questions or moot issues." *Id.* "There is common-law standing, which requires an injury in fact to a legally recognized interest [citation], and there is statutory standing, which requires the fulfillment of statutory conditions in order to sue for legislatively created relief [citation]." *People v. Coe*, 2018 IL App (4th) 170359, ¶ 43, 118 N.E.3d 1256; see also *People v. Johnson*, 2021 IL 125738, ¶ 31 (same).

¶ 17 The first question presented on appeal is whether Bonita had statutory standing to

seek grandparent visitation with A.N.B. under either section 11-7.1 of the Probate Act (755 ILCS 5/11-7.1 (West 2018)) or section 602.9 of the Marriage Act (750 ILCS 5/602.9 (West 2018)). "Questions of standing are reviewed *de novo*." *Piccioli v. Board of Trustees of Teachers' Retirement Systems*, 2019 IL 122905, ¶ 12, 137 N.E.3d 745.

¶ 18         Additionally, the issues presented on appeal concern matters of statutory construction, which are also subject to *de novo* review. *In re R.L.S.*, 218 Ill. 2d 428, 433, 844 N.E.2d 22, 26 (2006). Regarding issues of statutory construction, our supreme court has stated as follows:

> "The primary objective in construing a statute is to give effect to the legislature's intent, presuming the legislature did not intend to create absurd, inconvenient or unjust results. [Citation.] Accordingly, courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. [Citation.] The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. [Citation.] When the statutory language is clear, it must be given effect without resort to other tools of interpretation. [Citation.] Moreover, this court has a duty to construe a statute in a manner that upholds its validity and constitutionality if it reasonably can be done. [Citation.]" *Id.*

¶ 19                              1. *The Probate Act*

¶ 20         Article 11 of the Probate Act sets forth procedures and requirements related to the guardianship of a minor. 755 ILCS 5/11-1 to 11-18 (West 2018). Within that Article, section 11-7.1, entitled "Visitation rights," provides as follows:

- 7 -

"Whenever both parents of a minor are deceased, visitation rights shall be granted to the grandparents of the minor who are the parents of the minor's legal parents unless it is shown that such visitation would be detrimental to the best interests and welfare of the minor. In the discretion of the court, reasonable visitation rights may be granted to any other relative of the minor or other person having an interest in the welfare of the child. However, the court shall not grant visitation privileges to any person who otherwise might have visitation privileges under this Section where the minor has been adopted subsequent to the death of both his legal parents except where such adoption is by a close relative. For the purpose of this Section, 'close relative' shall include, but not be limited to, a grandparent, aunt, uncle, first cousin, or adult brother or sister." *Id.* § 11-7.1.

¶ 21        As stated, the trial court found section 11-7.1 of the Probate Act was applicable to the underlying proceedings and that Bonita was entitled to her requested relief under that section. We find the court erred in its determination. Instead, it is apparent from the record that Bonita cannot fulfill the necessary statutory conditions for relief, *i.e.*, grandparent visitation with A.N.B., under section 11-7.1 of the Probate Act. Thus, she lacks standing under that section.

¶ 22        Initially, section 11-7.1 provides for grandparent visitation only "[w]henever both parents of a minor are deceased." *Id.* In this instance, A.N.B.'s parents—Andrea and Daniel—are both alive. Accordingly, the plain and unambiguous statutory language renders section 11-7.1 inapplicable to the underlying circumstances. See *Bush v. Squellati*, 122 Ill. 2d 153, 156-57, 522 N.E.2d 1225, 1226 (1988) (stating a prior version of section 11-7.1 was inapplicable to maternal grandparents seeking visitation where such rights were "statutorily provided for in the case of the

death of both natural or adoptive parents" and "both natural parents voluntarily gave up their child for adoption, and both adoptive parents [were] still living").

¶ 23    The trial court here acknowledged that section 11-7.1 of the Probate Act did "not squarely apply" to Bonita's request for grandparent visitation given that A.N.B.'s parents were alive. Nevertheless, it applied that section stating (1) "[t]he Probate Act is to be liberally construed" and (2) that "the legislature's failure to anticipate [the underlying] fact pattern" should not prohibit grandparent visitation. The court's rationale is unpersuasive.

¶ 24    First, "[a]lthough the *** Probate Act provides that the Act shall be liberally construed to the end that controversies and the rights of the parties may be speedily and finally determined *** [citation], the Probate Act does not authorize a court to exceed the power given it by statute or to disregard clear legislative intent." (Internal quotation marks omitted.) *Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768, ¶ 104, 965 N.E.2d 1215. Here, the trial court's interpretation of section 11-7.1 significantly expands its scope, allowing it to be applied not only in circumstances where both of a minor's parents are deceased, but also while the parents are living. This exceeds the power given to the court by statute and the court's attempt to apply the statute here was impermissible.

¶ 25    We also find that the trial court's interpretation of section 11-7.1 is not consistent with the legislative intent behind that section. Legislative debates pertaining to section 11-7.1 reflect the following discussion:

    "Amendment #2 is an Amendment to the Probate Act, which provides that if both parents are deceased, that visitation rights shall be granted to the relatives of the minor, unless it is conclusively shown that said visitation would be detrimental to

the best interest and welfare of the minor. It was felt that \*\*\*, where \*\*\* both parents of a minor are deceased, that relatives as defined in the Bill, \*\*\* are of such a relation to the child that they are to be granted visitation rights, unless the court should find that they should be denied \*\*\*.

\* \* \*

[I]t was the idea of the Sponsor and apparently based upon some experience in the State of Illinois that when a parent of a child dies, that the relatives of the deceased parent \*\*\* ought to be granted visitation rights, unless it can be shown quite strongly that it is detrimental to the best interest of the child." 79th Ill. Gen. Assem., House Proceedings, June 9, 1976, at 42-43 (statements of Representative Leinenweber).

¶ 26    The legislative history of section 11-7.1 indicates it was enacted with the intention of protecting a minor's relationships with, or connections to, his or her close biological relatives, including grandparents. Further, it shows that section was only intended to apply when a minor's parents have died. The distinction between minors with living or deceased parents is a logical one to make because when the biological parents are living, concerns regarding the loss of a minor's connection to biological family members are lessened. In particular, a living parent has the ability to maintain familial relationships with the child.

¶ 27    Additionally, we note "[o]ne of the fundamental rights protected under the fourteenth amendment is the right of parents to make decisions concerning the care, custody, and control of their children without unwarranted state intrusion." *Wickham v. Byrne*, 199 Ill. 2d 309, 316, 769 N.E.2d 1, 5 (2002). A presumption exists "that a fit parent's decision to deny or limit

- 10 -

visitation is in the child's best interests." (Emphasis omitted.) *Id.* at 318. Accordingly, statutes have been ruled unconstitutional where they allow "any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review" and where they place "the best-interest determination solely in the hands of the judge," giving no special weight to parental determinations of a child's best interests. (Emphasis omitted.) *Id.* at 319.

¶ 28      When a minor's parents are both deceased, their fundamental rights and the presumptions those rights create are not at issue in the same way. However, the guardianship of a minor does not necessarily extinguish all rights of a living parent. Under the Probate Act's guardianship provisions, a parent does not have to be ruled unfit for a nonparent to obtain guardianship of a child and the parent may give consent for the guardianship. 755 ILCS 5/11-5(b) (West 2018) (stating "[t]he court lacks jurisdiction to proceed on a petition for the appointment of a guardian of a minor" when "the minor has a living parent, adoptive parent or adjudicated parent, whose parental rights have not been terminated, whose whereabouts are known, and who is willing and able to make and carry out day-to-day child care decisions concerning the minor, unless" the parent fails to object to the petition or consents to the appointment of a guardian). Additionally, upon the petition of a parent whose rights have not been terminated, a court must terminate the guardianship when "the parent establishes, by a preponderance of the evidence, that a material change in the circumstances of the minor or the parent has occurred since the entry of the order appointing the guardian; unless the guardian establishes, by clear and convincing evidence, that termination of the guardianship would not be in the best interests of the minor." *Id.* § 11-14.1(b).

¶ 29      We find the trial court's interpretation of section 11-7.1 does not account for

situations in which the living, fit parent of a minor who is the subject of a guardianship decides visitation with a grandparent or other close relative is not in the child's best interests. The court's ruling in the instant case would require visitation in those circumstances with no special weight accorded to the fit parent's preference.

¶ 30　　　　Second, we find no support for the trial court's determination that the legislature simply failed to anticipate the fact pattern in this case. As argued by Charles and Teresa, a guardianship for a minor whose biological parents are living is not an anomaly and there are many foreseeable circumstances under which a child whose biological parents are not deceased would become the subject of a guardianship proceeding. Further, even assuming the legislature failed to anticipate the specific fact pattern raised by Bonita's petition, "[w]e must interpret and apply statutes in the manner in which they are written and cannot rewrite them to make them consistent with the court's idea of orderliness and public policy." *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 558, 905 N.E.2d 831, 837 (2009). The trial court's interpretation of section 11-7.1 essentially rewrites that section to omit its qualifying language regarding when visitation rights may be granted. Accordingly, we find the court erred and Bonita lacked standing to proceed under that section.

¶ 31　　　　On appeal, Bonita suggests that the standing requirements applicable to her claim were set forth in section 11-5(b) of the Probate Act (755 ILCS 5/11-5(b) (West 2018)). However, that section contains the requirements for proceedings on a petition for the appointment of a guardian. Here, co-guardians had already been appointed for A.N.B., and the issue raised by Bonita's petition was one of grandparent visitation. Section 11-7.1 sets forth the requirements for seeking visitation rights with the minor under the Probate Act and, for the reasons expressed,

- 12 -

Bonita cannot meet the requirements of that section.

¶ 32                                   2. *The Marriage Act*

¶ 33        A grandparent may also petition for visitation with his or her grandchild under section 602.9 of the Marriage Act, entitled "Visitation by certain non-parents." 750 ILCS 5/602.9 (West 2018). That section provides that "[a]n appropriate person"—such as grandparents, great-grandparents, step-parents, and siblings—may bring an action for visitation "by filing a petition in a pending dissolution proceeding or any other proceeding that involves parental responsibilities or visitation issues regarding the child[.]" *Id.* § 602.9(b)(1). Where there is no pending proceeding that involves parental responsibilities or visitation, a petition may be filed independently "in the county in which the child resides." *Id.*

¶ 34        There are several express circumstances under which the Marriage Act's nonparent visitation provisions are inapplicable. Specifically, they do not apply to a child (1) who is the subject of a petition alleging abuse, neglect, or dependency under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2018)); (2) "in whose interests a petition to adopt by an unrelated person is pending under the Adoption Act"; (3) "who has been voluntarily surrendered by the parent or parents, except for a surrender to the Department of Children and Family Services or a foster care facility"; (4) "who has been previously adopted by an individual or individuals who are not related to the biological parents of the child or who is the subject of a pending adoption petition by an individual or individuals who are not related to the biological parents of the child"; or (5) "who has been relinquished pursuant to the Abandoned Newborn Infant Protection Act [(325 ILCS 2/1 *et seq.* (West 2018))]." 750 ILCS 5/602.9(b)(2). Regarding adoption, the Marriage Act also states as follows:

- 13 -

"Any visitation rights granted under this Section before the filing of a petition for adoption of the child shall automatically terminate by operation of law upon the entry of an order terminating parental rights or granting the adoption of the child, whichever is earlier. If the person or persons who adopted the child are related to the child, as defined by Section 1 of the Adoption Act, any person who was related to the child as grandparent, great-grandparent, or sibling prior to the adoption shall have standing to bring an action under this Section requesting visitation with the child." *Id.* § 602.9(b)(6).

¶ 35 Further, the Marriage Act provides that grandparents, great-grandparents, step-parents, and siblings may bring a petition for visitation when certain conditions are met, including when "(i) the child is born to parents who are not married to each other; (ii) the parents are not living together; (iii) the petitioner is a grandparent, great-grandparent, step-parent, or sibling of the child; and (iv) the parent-child relationship has been legally established." *Id.* § 602.9(c)(1)(E). Additionally, for a petition to be filed, there must have been "an unreasonable denial of visitation by a parent" which caused the child "undue mental, physical, or emotional harm." *Id.* § 602.9(b)(3), (c)(1).

¶ 36 Here, the trial court's written order reflects that it found section 602.9 of the Marriage Act inapplicable because A.N.B. was "not in the custody of a natural or adoptive parent." On appeal, Charles and Teresa argue the court's decision was "rightly decided" on that basis. We disagree. In particular, the plain language of section 602.9 contains no requirement that for it to apply, a child must be in the custody of a natural or adoptive parent. Section 602.9(b)(2) explicitly sets forth several circumstances that render its provisions inapplicable, none of which apply in the

- 14 -

present case. There is simply no exclusion in the relevant statutory language for children who are the subject of a guardianship and not in the custody of a parent. Both the trial court and the co-guardians have read a requirement into section 602.9 that is not present, and we find no support for their interpretation of the statute.

¶ 37    Charles and Teresa also argue that Bonita lacks standing under section 602.9 because they, and not a parent of A.NB., denied Bonita grandparent visitation. In two places, the Marriage Act states the requirement that to bring a petition for visitation, there must be "an unreasonable denial of visitation by a parent." *Id.* § 602.9(b)(3), (c)(1). On its face, this language would appear to render the statute inapplicable to the present case. As Charles and Teresa argue, they were the ones who denied Bonita visitation, not Daniel or Andrea. In fact, the record reflects that Daniel supported Bonita's efforts to obtain visitation with A.N.B. However, we find such an interpretation would lead to an absurd and unintended result. *Palm v. Holocker*, 2018 IL 123152, ¶ 21, 131 N.E.3d 462 (stating courts "have an obligation to construe statutes in a manner that will avoid absurd, unreasonable, or unjust results that the legislature could not have intended").

¶ 38    First, under the Probate Act, a "guardian of the person shall have the custody, nurture and tuition and shall provide education of the ward." 755 ILCS 5/11-13(a) (West 2018). The Probate Act does not define "custody"; however, such encompasses "[t]he care, control, and maintenance of a child." Black's Law Dictionary (11th ed. 2019). It involves legal custody, *i.e.*, decision-making authority, and physical custody, *i.e.*, caregiving authority. *Id.* Here, Charles and Teresa, as co-guardians, had custody of A.N.B. They provided for A.N.B. and exercised decision-making authority over her. Excluding their decisions from coverage under section 602.9 ignores the reality that they stepped into the shoes of A.N.B.'s parents and had the ability to override

- 15 -

parental decisions regarding visitation.

¶ 39 Second, the Marriage Act clearly permits a grandparent to petition for visitation based upon the unreasonable denial of visitation by a parent, so long as other stated requirements are also met. 750 ILCS 5/602.9(c)(1) (West 2018). Similarly, when a child has been adopted by a relative, a grandparent also has "standing to bring an action under" section 602.9. *Id.* § 602.9(b)(6). However, the interpretation of section 602.9 advocated for by Charles and Teresa would elevate the visitation decisions of guardians over those of parents and adoptive parents by allowing them to remain unchallenged as unreasonable and harmful to the child. Such would be true even when, as in this case, there is no parental objection to the visitation being sought. Given the fundamental rights and presumptions due parents over nonparents and because section 602.9 does not otherwise expressly exclude the circumstances of a guardianship from its purview, we find such an interpretation absurd and unreasonable. Accordingly, we find a petition for grandparent visitation under section 602.9 may also be based on a guardian's unreasonable denial of visitation.

¶ 40 Although we disagree with both the trial court and the co-guardians' interpretation of section 602.9, we also find that section inapplicable to the facts presented due to Bonita's inability to meet an additional statutory requirement. As stated, section 602.9 also provides that a petition for visitation may be filed only if the unreasonable denial of visitation has caused the child "undue mental, physical, or emotional harm." *Id.* § 602.9(b)(3), (c)(1). Because the court found the Marriage Act inapplicable, it held Bonita was not required to prove such harm. Nevertheless, in the end, it did determine that she failed to make such a showing, stating: "Bonita was unable to establish that the child's mental, physical, or emotional health suffered specifically from the loss of her relationship with *** Bonita." That finding is not challenged on appeal and no argument

- 16 -

has been presented that it was made in error. Further, our own review of record does not establish that the trial court's factual determination as to that issue was against the manifest weight of the evidence. Accordingly, Bonita was not entitled to her requested relief under section 602.9 of the Marriage Act.

¶ 41    Ultimately, the trial court's comments reflect its determination that Charles and Teresa, as A.N.B.'s co-guardians, were not entitled to the fundamental rights due parents and which section 602.9 of the Marriage Act seeks to protect through its more onerous standards. Accordingly, the court ruled the Marriage Act was inapplicable and utilized, instead, the less burdensome best-interest standard set forth in the Probate Act, which was clearly intended to apply only when a minor's parents are deceased. We note that "where *** the legislature has spoken, the question of public policy is not for the courts to decide." *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 63, 949 N.E.2d 639, 649 (2011). Here, the court overstepped its authority and ignored the plain language of the relevant statutory provisions. Accordingly, its award of grandparent visitation in favor of Bonita must be reversed.

¶ 42                                B. Remaining Issues

¶ 43    As set forth above, Charles and Teresa raise several other challenges to the trial court's decision. However, because we hold that Bonita was not entitled to her requested relief under either the Probate Act or the Marriage Act, it is unnecessary to reach those additional issues and we decline to address them.

¶ 44                                III. CONCLUSION

¶ 45    For the reasons stated, we reverse the trial court's judgment.

¶ 46    Reversed.